IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NORBERT A. SCHUELLER,

       Plaintiff,

v.                                        CIV 16-0107 MV/KBM

WELLS FARGO & COMPANY, d/b/a
WELLS FARGO BANK, N.A., d/b/a WELLS
FARGO HOME MORTGAGE,

       Defendant.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Plaintiff's (Opposed) Motion &

Affidavit for Remand to State District Court ("Motion to Remand"), filed on February 29,

2016. *Doc. 7*. The Honorable Martha A. Vazquez referred this matter to me on March

28, 2016, to conduct hearings, if warranted, including evidentiary hearings, and to

perform any legal analysis required to recommend to the Court an ultimate disposition

of the case. *Doc. 12*. Having considered the parties' submissions, the relevant law, and

the record in this case, the Court recommends that Plaintiff's Motion to Remand be

denied.

## I.    Background

On January 15, 2016, Plaintiff filed the present action in the Thirteenth Judicial

District Court, County of Valencia, State of New Mexico, asserting claims for conversion

and defamation against Defendant Wells Fargo and Company ("Defendant"). *Doc. 1,*

*Ex. 1*. On February 12, 2016, Defendant removed this action to federal court pursuant to

28 U.S.C. § 1441(a), indicating that it was improperly named as a d.b.a. of Wells Fargo

Bank, N.A. and Wells Fargo Home Mortgage. *See Doc. 1*. Defendant asserted that, as

the Complaint was pled, there was complete diversity of citizenship of the parties and

the amount in controversy exceeded $75,000. *Id.* at 2. Defendant explained that while

Plaintiff resided in and was believed to be a citizen of New Mexico, it was a Delaware

corporation with its principal place of business in California, making it a citizen of those

two states for diversity jurisdiction purposes. *See id.* Additionally, it asserted that the

amount in controversy exceeded $75,000. *Id.* at 3. Following removal, Plaintiff filed his

Motion to Remand, asserting that Defendant had failed to establish either diversity of

citizenship or the requisite amount in controversy. *Doc. 7*.

## II.     Legal Standard

Federal district courts have original jurisdiction over all civil actions where the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs, and is between citizens of different states. 28 U.S.C. § 1332(a). When a plaintiff

files in state court a civil action over which the federal district courts would have original

jurisdiction based on diversity of citizenship, the defendant may remove that action to

federal court, *see* 28 U.S.C. § 1441(a), provided no defendant is a citizen of the State in

which such action is brought. § 1441(b).

In order to achieve complete diversity of citizenship, as § 1332(a) requires, "the

citizenship of all defendants must be different from the citizenship of all plaintiffs." *See*

*McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008).  A person's domicile, the

equivalent of state citizenship, is determined by their residence coupled with an

2

intention to remain in the state indefinitely. *See Crowley v. Glaze*, 710 F.2d 676, 677-78 (10th Cir. 1983). A corporation, however, is deemed to be a citizen both of the state in which it is incorporated and in which it maintains its principal place of business. 28 U.S.C. § 1332(c).

"The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal." *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owen*, 135 S. Ct. 547 (2014). A removal notice must plausibly allege on its face that the amount-in-controversy requirement is met. *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 550. These allegations should be accepted when not contested by the plaintiff or questioned by the court. *Id.* However, when the plaintiff does contest the defendant's allegations upon removal, as Plaintiff does here, the Defendant must prove its factual assertions as to the amount in controversy by a preponderance of the evidence. *Id.*

### III.   Analysis

#### A.   Diversity of Citizenship

In his Motion to Remand, Plaintiff contends that Wells Fargo Bank, N.A. is not diverse from Plaintiff, because both are citizens of New Mexico. *Doc. 7* at 3-4. Defendant maintains, on the other hand, that the citizenship of Wells Fargo Bank, N.A. is irrelevant for diversity purposes, as Wells Fargo & Company is the only named defendant. *Doc. 9* at 2. Alternatively, it submits that even if Wells Fargo Bank N.A.'s citizenship were relevant for diversity purposes, it too is diverse from Plaintiff.

As for Plaintiff's citizenship, the Complaint alleges that "for all times relevant herein: Plaintiff, Norbert A. Schueller, has continuously (without interruption) resided in Valencia County on the west mesa of Belen, south of Belen's Alexander Airport since 2002." *See Doc. 1*, Ex. 1 at ¶ 2(a). Likewise, Defendant alleges in its Notice of Removal that Plaintiff "is believed to be a citizen of New Mexico," *Doc. 1* at 2, and Plaintiff implicitly concedes in his Motion to Remand that he is a citizen of New Mexico, *see Doc. 7* at 3-4 (arguing that there is no diversity of citizenship, because Wells Fargo Bank, N.A. has an office in New Mexico).

Defendant, on the other hand, is a Delaware corporation with its principal place of business in California. *See Doc. 1* at 2.  Thus, Defendant is a citizen of both Delaware and California but not of New Mexico. *See* 28 U.S.C. § 1332(c) (a corporation is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business"). Plaintiff's Complaint indicates that the intended defendant is: "Wells Fargo & Company, d.b.a. Wells Fargo Bank, N.A., d.b.a. Wells Fargo Home Mortgage." *Doc. 1*, Ex. 1. Plaintiff's summons, in turn, was issued to "Wells Fargo & Company c/o Wells Fargo Bank, N.A." *Doc. 1-2* at 2. Only Defendant Wells Fargo & Company filed a responsive pleading in which it advised that it was "improperly named as a d.b.a. of Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage." *Doc. 10* at 1. The Court agrees with Defendant that, at present, only Wells Fargo and Company's citizenship must be considered for purposes of diversity jurisdiction. *See Lincoln Property Co. v. Roche,* 546 U.S. 81, 85, 94 (2005) (holding that a defendant "may remove an action on the basis of diversity of citizenship if there is complete diversity between all *named* plaintiffs and all *named* defendants" and

reasoning that corporate defendants do not acquire the citizenship of all or any of their affiliates) (emphasis added). As such, the Court is satisfied that Defendant has established diversity of citizenship by a preponderance of the evidence.

Furthermore, even if Wells Fargo Bank, N.A.'s citizenship were relevant to the analysis, diversity jurisdiction would remain. The parties agree that Wells Fargo Bank, N.A. is a national bank organized under the National Bank Act and subject to 28 U.S.C. § 1348, which provides that "[a]ll national banking associations shall, for purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." § 1348. They disagree, however, over the proper interpretation of the term "located" in this statute. Plaintiff interprets "located" broadly to mean any state in which the banking association operates a branch. *See Doc. 7* and *Doc. 13.* Defendant, in contrast, insists that a national banking association is only a citizen of the state designated as its main office on its organization certificate. *Doc. 9* at 2.

The Supreme Court's holding in *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) resolves this dispute over statutory interpretation in favor of Defendant. In *Wachovia*, the Court held that "a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Id.* at 307. Significantly, the Court rejected the proposition maintained by Plaintiff here -- that a national bank is a citizen of every state in which it has a branch. *See id.* at 316 ("None of the Court of Appeals' rationales persuade us to read § 1348 to attribute to a national bank, for diversity jurisdiction purposes, the citizenship of each State in which the bank has established branch operations.") Accordingly, the presence of branch locations in New Mexico does not render Wells Fargo Bank, N.A. a citizen of New Mexico for

diversity purposes. Instead, as the Tenth Circuit has acknowledged in other cases, Wells Fargo Bank, N.A. is a citizen of South Dakota. *See, e.g., Gorsuch, Ltd. B.C. v. Wells Fargo National Bank Association*, 771 F.3d 1230, 1235 n.3 (10th Cir. 2014) (referencing 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, and finding that "[f]or the purposes of diversity jurisdiction, Wells Fargo[, N.A.] is a citizen of South Dakota, where its main office located").

### B. Amount in Controversy

Next, Plaintiff suggests that Defendant has failed to "attain the jurisdictional minimum threshold of $75,000." *Doc. 7* at 7. In order for diversity jurisdiction to exist, the matter in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). When a Plaintiff's damages are unspecified in his complaint, as they are here, courts generally rely on various sources to determine the amount in controversy, including "a combination of facts and theories of recovery" presented in the complaint as well as "other documentation." *See McPhail*, 529 F.3d at 956. For instance, "documents that demonstrate plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal." *Id.*

In his Complaint, Plaintiff alleges that he had a home mortgage loan with Defendant with a 20-year term at the time that he filed for Chapter 7 bankruptcy in July 2010, and received an "*in personam* discharge of his debts on 1 November 2010." *Doc. 1*, Ex. 1 at 4. Plaintiff asserts that "[b]eginning in November, 2010, and continuing to the present, after the 4th day of each month Wells Fargo has taken from plaintiff's checking account . . . a purported monthly payment for, *according to Wells Fargo*, a non-existent debt and a no-longer-extant home mortgage loan-account." *Id.* at ¶ 4.b (emphasis in

original).  Plaintiff asserts claims against Defendant for conversion and defamation and seeks both compensatory and punitive damages. *See id.* at 6-12. With respect to his conversion claim, he maintains that "[f]or each month beginning with November, 2010 and continuing to the present Wells Fargo has unlawfully extracted or embezzled monies via an automatic debt from plaintiff's checking account . . . and has converted to its (Wells Fargo's) own use those monies so obtained for an unlawful purpose." *Id.* at ¶ 8. With respect to his defamation claim, he contends that "Wells Fargo made false and malicious statements to credit reporting agencies, causing harm to his reputation." *Id.* at ¶ 11-12.

Plaintiff appends to his Complaint various documents, including home loan statements from Defendant, bank statements, and credit reports. *See id.* at 14-38. Plaintiff's home loan statements and bank statements, together with the allegations of his Complaint, indicate that "WF HOME MTG" made automatic withdrawals of approximately $430.00 per month during the relevant time period, beginning in November 2010 and continuing at least until the filing of his Complaint in January 2016. *See id.* Aggregating monthly withdrawals of $430.00 from November 2010 until January 2016, the Court arrives at a sum of approximately $27,090 in funds allegedly "embezzled" from Plaintiff's account.

In an effort to demonstrate that the jurisdictional amount is not met, Plaintiff provides a sworn affidavit along with his Motion to Remand in which he states that "the total amount converted by Wells Fargo is approximately $13,855.65"[1] after excluding the portions of his monthly mortgage payments attributable to taxes and insurance. *Doc.*

---

[1] Plaintiff explains that this amount is reached by subtracting his unpaid principal balance as of January 4, 2010, from the unpaid principal balance on January 4, 2016, and then adding $3,371 in interest. *Doc. 7* at 12.

*7* at 12. Notably, in his Complaint Plaintiff makes no distinction for portions of Defendant's withdrawals attributable to taxes and insurance; instead, he broadly asserts that Defendant was not authorized to withdraw "any funds" and that it unlawfully converted the monies it withdrew to its own use. *See Doc. 1,* Ex. 1, at ¶ 7(d).  The explanation of compensatory damages for conversion supplied by Plaintiff in his Motion to Remand departs significantly from the allegations of his Complaint.  Consequently, the Court questions whether his estimate of compensatory damages was strictly made to defeat diversity jurisdiction. *See Marcel v. Pool Co.*, 5 F.3d 81, 85 (5th Cir. 1993) (reasoning that when a plaintiff seeks to reduce rather than clarify an amount in controversy after removal, it will not remand for want of jurisdictional amount).

A court is not bound by a plaintiff's assessment of the amount in controversy, nor must it assume that the plaintiff's own assessment is necessarily more reliable than the court's own assessment or that of the defendant. The Eleventh Circuit described the role of district courts in assessing the amount in controversy as follows:

> [D]istrict courts . . . make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable. Put simply a district court need not suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount. Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

*Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1062-63 (11th Cir. 2010) (omitting internal quotations and citations).

Though Plaintiff indicates in his affidavit that he estimates his compensatory damages for conversion to be $13,855.65, he stops short of swearing that he will not seek, nor would he accept, more than that amount in compensatory damages even

8

upon remand.  Plaintiff's stated opinion that the amount in controversy does not exceed $75,000 is insufficient to deprive the Court of jurisdiction, where his Complaint suggests otherwise. *See Cresson v. State Farm Fire and Cas. Co.*, No. 09cv6866, 2010 WL 1664001, at *2 (E.D. La. April 22, 2010) (reasoning that a plaintiff's estimate of her damages at less than $75,000, in the absence of a binding stipulation renouncing her right to recover in excess of that amount, did not overcome the amount in controversy that was facially apparent from the Complaint); *Martin v. State Farm Fire and Cas. Co.*, 826 F. Supp. 2d 1133 (D. Minn. 2011) (determining that the plaintiffs could not rely on "self-serving, contradictory Affidavits" that contained estimates of their damages to justify diversity jurisdiction).

Employing its own judicial experience and common sense in determining the compensatory damages for Plaintiff's conversion claim facially apparent from the Complaint, the Court favors its own calculation of compensatory damages over Plaintiff's own estimate.  Even so, these damages amount to just over one-third of the requisite amount in controversy for diversity jurisdiction and are insufficient on their own to satisfy the jurisdictional threshold.

As Defendant notes, Plaintiff also seeks unspecified damages for reputational harm arising from Defendant's purportedly defamatory communications to credit reporting agencies. *Doc. 1*, Ex. 1, at 8-9. Defendant does not attempt to estimate or calculate any additional compensatory damages for Plaintiff's defamation claim, but only suggests that this claim may increase the amount in controversy.  While Plaintiff contends that his defamation claim "was pleaded in the alternative" to his conversion

claim and damages for the claims should not be aggregated, Defendant insists that "the Complaint allegations belie this argument." *Doc. 9* at 4.

Plaintiff's Complaint states, at least three times, that his defamation claim is asserted "in the alternative." *See Doc. 1*, Ex. 1, at 1, 5. Construing his claims broadly, as the Court must, Plaintiff's alternative claims are as follows: if Defendant's representations to the credit reporting companies were true, Defendant is liable for conversion because it had not right to extract funds from his bank account, *see id.* at ¶ 7-10; alternatively, if Defendant's representations to the credit reporting companies were not true, it is liable to Plaintiff for defamation because it conveyed that "plaintiff did not pay his just debts and was, therefore, dishonest in his financial affairs," *see id.* at ¶ 11-13.

Federal Rule of Civil Procedure 8(d) permits parties to "set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d). The Court is satisfied that Plaintiff's conversion and defamation claims are pled alternatively. The more difficult question, however, is whether the amount in controversy for these alternative claims should be aggregated when determining the amount in controversy.

The general rule is that when a single plaintiff sues a single defendant, the value of all of the plaintiff's claims can be aggregated in determining whether the requisite jurisdictional amount in controversy is met. *See* 14AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Juris. § 3704 (4th ed. 2016); *see also Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (holding that a plaintiff may aggregate damages from separate claims against a defendant to meet the amount in

controversy). It is also sometimes said that "[a]ggregation is permitted even when the claims are asserted on alternative theories." See 14AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Juris. § 3704. Nevertheless, some courts have also declined to aggregate damages for alternative claims. *See, e.g., Atrion Networking Corp. v. Marble Play, LLC,* 18 F. Supp. 3d 136, 140 (D.R.I. 2014) (declining to aggregate damages for the plaintiff's breach of contract and unjust enrichment claims, which were pled in the alternative, and concluding that the unjust enrichment claim was independently sufficient in dollar amount to confer federal subject matter jurisdiction)*; Roth v. Bierman*, No. 10cv0239, 2010 WL 25728867, at *5 (N.D. Ohio June 23, 2010) (unpublished) (holding that the plaintiff, who filed his complaint in federal court, could not aggregate damages for his promissory estoppel claim with damages for his other claims, because promissory estoppel was pled as an alternative theory of recovery); *Marketing Associates, Inc. v. Fellowes, Inc.*, No. 05cv1518, 2006 WL 721619, at *1 (N.D. Ohio Mar. 21, 2006) (unpublished) (refusing to aggregate damages for unjust enrichment and breach of contract claims to reach the requisite amount in controversy, where the claims were legally, though not expressly, alternative).

Under the circumstances, and resolving any doubts in favor of the party seeking remand, the Court is not convinced that it would be proper to aggregate damages for Plaintiff's conversion and defamation claims. Moreover, even if these damages were aggregated, the Court questions whether they would increase the amount in controversy to a significant degree. Although Plaintiff asserts that Defendant's statements to credit reporting agencies caused him reputational harm by conveying that he "did not pay his just debts," the Court notes that Plaintiff explains in his Complaint

that he filed for Chapter 7 bankruptcy in July 2010. Filing for bankruptcy, of course, suggests that Plaintiff was not able to satisfy his outstanding debts. In the Court's assessment, any damages for reputation harm could only be minimal.

In the end, it is likely inconsequential whether damages for Plaintiff's conversion and defamation claims are aggregated.  As discussed hereinafter, Plaintiff's compensatory and punitive damage for conversion appear independently sufficient to confer subject matter jurisdiction.

In addition to compensatory damages, Plaintiff also seeks punitive damages for his conversion and defamation claims. *See Doc. 1,* Ex. 1, at ¶ ¶ 10, 13. Plaintiff argues that "Wells Fargo's claim of punitive damages in order to reach the jurisdictional threshold is just too speculative to be viable, especially so in light of the very limited amount of compensatory damages." *Doc. 13* at ¶ 10. Plaintiff's position that his own punitive damages claim is speculative does not render it improper for the Court to aggregate the claim in determining the amount in controversy. Typically, courts do not, at the jurisdictional stage, inquire into the merits of the claim. *See Bell v. Hood*, 327 U.S. 678, 682 (1946).

 While determination of the amount in controversy is decided under federal standards, in diversity of citizenship cases "federal courts must look to state law to determine the nature and extent of the right that the plaintiff is seeking to have enforced or protected." 14AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Juris. § 3702 (4th ed. 2016). "This principle obviously, as the case law makes clear, includes examining the forum state's rules regarding the applicable measure of damages and the availability of special and punitive damages." *Id.*

Here, a claim for punitive damages may be included in the jurisdictional amount to the extent that punitive damages are permitted for the claim under New Mexico law. *See Walker v. THI of New Mexico at Hobbs Ctr.*, 803 F. Supp. 2d 1287, 1327 (D.N.M. 2011). Punitive damages are available under New Mexico law for conversion claims.[2] *See Chavarria v. Fleetwood Retail Corp.*, 143 P.3d 717, 728-30 (N.M. 2006). As such, the Court considers a potential punitive damage award for that claim in assessing the jurisdictional amount.

In New Mexico, a plaintiff may recover punitive damages to the extent allowed by the United States Constitution. *See Chavarria*, 143 P.3d at 728. The constitutionality of a punitive damages award is measured by three criteria: 1) the reprehensibility of the defendant's conduct, or the enormity and nature of the wrong; 2) the relationship between the harm suffered and the punitive damages award; and 3) the difference between the punitive damages award and civil and criminal penalties authorized or imposed in comparable cases. *See id.*

As to the first and third criterion, the Court notes that Plaintiff alleges in his conversion claim that Defendant intentionally and recklessly embezzled money from his checking account at a time when his medical debts had already forced him into bankruptcy. *See Doc. 1*, Ex. 1, at ¶ 5, 9, 14. If Plaintiff is able to provide evidentiary support for these allegations, and Defendant is without a meritorious defense, significant punitive damages may be warranted. Indeed, the conduct as alleged by Plaintiff could be characterized as consistent with the crimes of larceny or embezzlement in an amount exceeding twenty thousand dollars, which are each

---

[2] While punitive damages are also available for Plaintiff's defamation claim, *see Newberry v. Allied Stores, Inc.*, 773 P.2d 1231, 1237 (N.M. 1989), the Court disregards such damages in its analysis here, given the alternate nature of Plaintiff's claims.

described by New Mexico criminal statutes as second degree felonies.  *See* NMSA §
30-16-1 (larceny) and § 30-16-8 (embezzlement). The reprehensibility and the
substantial criminal penalties for conduct similar to that alleged by Plaintiff would weigh
in favor of a substantial punitive damages award.

The second criterion for assessing punitive damages focuses on the ratio
between compensatory and punitive damages. *See Chavarria*, 143 P.3d at 729. The
Supreme Court has instructed that "few awards exceeding a single-digit ratio between
punitive damages and compensatory damages, to a significant degree, will satisfy due
process." *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Purely
economic harm, as that alleged in Plaintiff's conversion claim, often warrants a lower
ratio of punitive to compensatory damages than would harm to the health or safety of
individuals. Even so, "'infliction of economic injury, especially when done intentionally
through affirmative acts of misconduct, or when the target is financially vulnerable, can
warrant a substantial penalty." *See Continental Trend Resources, Inc. v. OXY USA,
Inc.*, 101 F.3d 634 (10th Cir. 1996) (quoting *BMW of North America, Inc. v. Gore*, 517
U.S. 559, 576 (1996)); *see also Chavarria*, 143 P.3d at 728-30 (concluding that a
substantial punitive damage award was necessary to punish a defendant for fraudulent
conduct directed at a low-income couple).

Given the Court's estimate of $27,090 in compensatory damages in controversy
on Plaintiff's conversion claim, a punitive-to-compensatory-damages ratio of only 2.77 to
1 would be necessary to reach the $75,000 jurisdictional threshold. The Court notes that
this ratio falls within the range of single-digit ratios that the Supreme Court has
suggested are most likely to comport with due process. *See Campbell*, 538 U.S. at 425.

Additionally, as Defendant has demonstrated, New Mexico juries have awarded and
New Mexico courts have upheld ratios much higher than this, even in economic injury
cases. *See, e.g., Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 976 P.2d 1, 18
(S.Ct. 1999) (concluding that a ratio of 7.4 to 1 "easily bears constitutional scrutiny");
*Chavarria*, 143 P.3d at 729-30 (concluding that the 14.7 to 1 ratio of was not an
"unconstitutionally large ratio," but remanding because the record did not reflect why the
court reduced the amount).

In sum, even putting aside Plaintiff's alternative claim for defamation, the Court is
satisfied that Defendant has established by a preponderance of the evidence that the
amount in controversy for Plaintiff's conversion claim, in both compensatory and
punitive damages, exceeds $75,000.

## IV.   Conclusion

For all of these reasons, the Court concludes that Defendant has established
diversity jurisdiction by a preponderance of the evidence.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Remand should be
denied.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a
copy of these Proposed Findings and Recommended Disposition they may file written
objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A
party must file any objections with the Clerk of the District Court within the
fourteen-day period if that party wants to have appellate review of the proposed
findings and recommended disposition.   If no objections are filed, no appellate
review will be allowed.**

UNITED STATES CHIEF MAGISTRATE JUDGE

15