IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NORBERT A. SCHUELLER,

   Plaintiff,

v.               CV 16-107 MV/KBM

WELLS FARGO & COMPANY, d/b/a
WELLS FARGO BANK, N.A., d/b/a WELLS
FARGO HOME MORTGAGE,

   Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Wells Fargo & Company's Motion to Dismiss ("Motion to Dismiss") [Doc. 10] and Wells Fargo and Company's Rule 11 Motion for Sanctions ("Motion for Sanctions") [Doc. 11]. The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion to Dismiss and the Motion for Sanctions are well-taken and will be granted.

### BACKGROUND

In 2005, Plaintiff Norbert Schueller obtained a mortgage loan from Wells Fargo & Company ("Wells Fargo") secured by real property in Valencia County. Doc. 1-2 at ¶ 3. Plaintiff's monthly mortgage payments are made to Wells Fargo via an automatic withdrawal from his checking account at Bank of the West. Id. at ¶¶ 4(a)-(b).

On July 22, 2010, Plaintiff filed for Chapter 7 bankruptcy. *See In re Schueller*, No. 10-13665-j7. The bankruptcy petition included the Wells Fargo mortgage loan. Doc. 1-2 at ¶ 5. Plaintiff received a discharge on November 1, 2010. Id. As a result of the bankruptcy discharge, Plaintiff's personal liability for the Wells Fargo mortgage was discharged but the *in*

1

*rem* liability on the property remains. Id. Since the date of discharge, Plaintiff has continued to make the monthly payments on his mortgage. Id.

On October 25, 2011, Plaintiff, proceeding *pro se*, filed an action against Wells Fargo and three credit reporting agencies ("CRAs"), for violations of the Fair Credit Reporting Act ("FCRA"), defamation, and conversion. *See Schueller v. Experian Info. Solutions, Inc., et al.*, U.S.D.C., No. 11-cv-00955 (MCA/LFG) ("2011 Action"), Doc. 1. In his complaint in the 2011 Action, Plaintiff alleged that, after he filed for bankruptcy and received a discharge of his mortgage loan with Wells Fargo in November 2010, Wells Fargo continued to automatically withdraw mortgage payments from his bank account. 2011 Action, Doc. 1 at ¶¶ 9(a), 12(b), (c). Plaintiff alleged that, because he continued to make his mortgage payments, it was false or inaccurate for Wells Fargo to report his mortgage loan as "closed" and/or with a $0 balance on his credit reports. Id. at ¶¶ 15-16. Plaintiff alleged: "If this is really true, then defendant Wells Fargo has been unlawfully and fraudulently extracting monies from plaintiff's checking account since October, 2010." Id. at ¶ 15(c).

Specifically, Plaintiff challenged Wells Fargo's reporting to the CRAs that: (1) his account was closed; (2) the account had a $0 balance; and (3) there was no payment history after November, 2010. Id. at ¶¶ 118, 119, 123. Plaintiff further alleged that, if these statements were in fact true, then "Wells Fargo has no legal right to extract from plaintiff's checking account monies as payment on that loan." Id. These allegations formed the basis for his FCRA, defamation, and conversion claims. Id. at ¶¶ 115-125, 127-132, 133-135.

On December 5, 2011, Wells Fargo filed a motion to dismiss Plaintiff's complaint. 2011 Action, Doc. 25. On July 30, 2012, this Court entered a Memorandum Opinion and Order granting Wells Fargo's motion to dismiss ("Dismissal Order"). 2011 Action, Doc. 68. In the

Dismissal Order, the Court explained that Plaintiff's bankruptcy discharge only discharged his personal liability for the debt, not the mortgage lien: "a bankruptcy discharge extinguishes only one mode of enforcing a claim – namely an action against the debtor *in personam* – while leaving intact another – namely, an action against the debtor *in rem*." Id. at 14 (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991)). The Court also noted that the bankruptcy discharge included an explanation that "a debtor may voluntarily pay any debt that has been discharged." Id. at 15.

The Court concluded that "Wells Fargo accurately and truthfully reported that Plaintiff's personal liability on his home mortgage loan had been discharged in the Chapter 7 bankruptcy proceeding" and "[b]ecause Wells Fargo did not furnish inaccurate or untruthful information to [the CRAs], Plaintiff's FCRA and defamation claims fail as a matter of law." Id. at 18-19.

With regard to Plaintiff's conversion claim, the Court concluded that Wells Fargo retained a security interest in the mortgaged property, and thus it was "not prohibited from accepting Plaintiff's voluntary payments" even though it could not collect or recover any of the discharged debt from Plaintiff personally. Id. at 19-20 (citing Sections 524(a)(2) 524(f) of the Bankruptcy Code). Based on the pleadings and exhibits, the Court concluded that Plaintiff's monthly payments on his home mortgage loan were voluntary. Id. at 20. First, the Court explained that the complaint did not allege that Wells Fargo withdrew the monthly mortgage payments without Plaintiff's authorization or contrary to his instructions. Id. at 20-21. Second, the Court noted that Plaintiff's quarterly mortgage statements, which were attached to his complaint, indicated that the mortgage payments were automatically withdrawn from Plaintiff's bank account at his direction. Id. at 20. Finally, the Court found that the mortgage

3

statements indicated that Plaintiff's payments were neither influenced nor induced by Wells Fargo, as they stated in relevant part:

> This statement is for informational purposes only and is being provided as a courtesy should you voluntarily decide to make your loan payments. This statement should not be construed as an attempt to collect a debt or a demand for payment contrary to any protections you may have received pursuant to your bankruptcy case. If you have received a discharge, and the loan was not reaffirmed in the bankruptcy case, we will only exercise our rights as against the property and we are not attempting to act to collect the discharged debt personally. . . . This statement is for informational purposes only. Our records indicate that your loan is subject to bankruptcy. The attached coupon reflects the calendar due date, not the contractual due date of the bankruptcy case. If you have any questions regarding your loan, please contact your bankruptcy attorney or our office.

Id. at 21 (quoting 2011 Action, Doc. 1-1 at 28, 38; Doc. 1-2 at 10, 18, 30, 36-38). The Court thus concluded that Plaintiff's complaint failed to state a claim for conversion. Id.

The Court determined that it would be futile to grant Plaintiff leave to amend his FCRA and defamation claims, as the record demonstrated that Wells Fargo reported truthful and accurate information to the CRAs, and thus dismissed those claims **with prejudice**. Id. at 22. The Court, however, indicated that Plaintiff might "be able to allege additional facts indicating that his monthly mortgage payments were not voluntary," and accordingly, dismissed Plaintiff's conversion claim **without prejudice**. Id.

On August 29, 2012, Wells Fargo filed a motion for attorney fees and costs. 2011 Action, Doc. 71. On March 27, 2013, the Court entered a Memorandum Opinion and Order granting in part Wells Fargo's motion ("Fee Order"). 2011 Action, Doc. 82. The Court described Plaintiff as a "law-trained *pro se* litigant and frequent filer of various and sundry lawsuits." Id. at 1. The Court stated:

> As noted above, Schueller is very experienced in bringing and litigating claims under the FCRA. But the documents on which Schueller based his FCRA, defamation, and conversion claims against Wells Fargo were entirely groundless

4

> because they clearly controverted his contention that Wells Fargo misrepresented information on his credit report about Schueller's discharge in bankruptcy or his payment history from 2005 until November 2010. As the Court has previously explained to Schueller, the fact that Wells Fargo has a security interest in the real property and, therefore, still has the right to bring an *in rem* procedure and foreclose on the property secured by the mortgage if Schueller elects to stop making the mortgage payments on the debt does not mean that Wells Fargo "lied" in reporting that the loan balance for which Schueller is personally responsible is zero. As Schueller has readily concede[d], a chapter 7 discharge only eliminates personal liability for a debt; a discharge in bankruptcy is not an extinguishment or cancellation or elimination of a debt.

Fee Order at 9. While the Court concluded that Plaintiff's complaint was "frivolous," it could not equally conclude that Plaintiff had commenced his action in "bad faith," because it was not clear that he necessarily understood the import of the bankruptcy proceedings on Wells Fargo's reporting requirements or its continuing right to foreclose if payments stopped. Id. at 9-10. Accordingly, the Court declined to award Wells Fargo any fees through the filing of its motion to dismiss. The Court, however, concluded that after Wells Fargo filed its motion to dismiss "fully appris[ing] Schueller of the law, as well as the magistrate judge explaining to Schueller his complaint was without merit, "Schueller stubbornly, and without any legal basis for doing so, persisted in pursuing his claims in bad faith." Id. at 10. Thus, the Court awarded Wells Fargo the amount the Court determined to be its reasonable fees "from that point forward in replying to Schueller's bad-faith response to the motion to dismiss under [15 U.S.C.] § 1681n(c) and/or its inherent power to sanction bad-faith or vexatious, harassing filings." Id.

Consistent with the Dismissal Order and the Fee Order, the Court entered Final Judgment on March 7, 2013. 2011 Action, Doc. 81. Plaintiff, proceeding *pro se*, appealed both Orders to the United States Court of Appeals for the Tenth Circuit. The Tenth Circuit concluded that "Wells Fargo did not furnish inaccurate or incomplete information to the CRAs," and that this conclusion was "fatal to Mr. Schueller's state-law defamation claim." *Schueller v. Wells Fargo*

*& Co.*, 559 F. App'x 733, 737 (10th Cir. 2014). Further, the Court concluded that "[a]lthough Wells Fargo was prohibited by the bankruptcy discharge from attempting to collect the home loan debt from Mr. Schueller personally, it was not prohibited from accepting voluntary payments to avoid foreclosure." *Id.* at 738. Accordingly, the Tenth Circuit affirmed the district court's dismissal of Plaintiff's defamation and conversion claims. *Id.* With regard to the fee award, the Court noted that Plaintiff did "not challenge the district court's assessment of hourly rates or time expended, nor [did] he challenge the district court's finding that he engaged in bad-faith litigation conduct." *Id.* Thus, the Court found "no abuse of discretion and affirm[ed] the award of attorney fees and costs to Wells Fargo." *Id.* Plaintiff filed a petition for writ of certiorari to the United States Supreme Court, which was denied on October 6, 2014. *Schueller v. Wells Fargo & Co.*, 135 S. Ct. 275 (2014).

On January 15, 2016, Plaintiff, proceeding *pro se*, commenced the instant action against Wells Fargo in the Thirteenth Judicial District Court of the State of New Mexico, Valencia County. Wells Fargo removed the action to this Court on February 12, 2016. Doc. 1. In the Complaint, Plaintiff alleges – as he did in the 2011 Action – a claim of conversion (Count I) and a claim of defamation (Count II). Plaintiff's claims in the instant action are based on *the same conduct* that was at issue in the 2011 Action, namely the withdrawal by Wells Fargo of monthly mortgage payments from Plaintiff's bank account for a "non-existent debt and a no-longer extant home mortgage loan account." Doc. 1-2, at ¶ 4(b). In support of his defamation claim, Plaintiff alleges that Wells Fargo is inaccurately and falsely reporting to the CRAs that his mortgage account is closed and has a $0 balance and that no payment history has been reported since November 2010. Id. at ¶¶ 6, 11. In support of his conversion claim, Plaintiff alleges that if what Wells Fargo is reporting to the CRAs is true – that the account is closed and there is no

6

balance – then there is "no legally valid and enforceable lien on the property" and Wells Fargo has "no legal basis for demanding and extracting a monthly mortgage payment." Id. at ¶ 7.

On March 18, 2016, Wells Fargo filed the instant Motion to Dismiss and Motion for Sanctions. Plaintiff opposes both motions.

## DISCUSSION

I. Motion to Dismiss

A. Legal Standard

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

7

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.* at 679.

### B. The Instant Case

In its Motion to Dismiss, Wells Fargo argues that the instant action should be dismissed with prejudice. Specifically, Wells Fargo contends that Plaintiff's claims are barred under the doctrine of res judicata, and that, even if res judicata does not apply, Plaintiff's claims are subject to dismissal because he has failed to properly state a claim upon which relief can be granted for either defamation or conversion. Plaintiff opposes Wells Fargo's motion. With regard to his defamation claim, Plaintiff argues that, in the event that Wells Fargo disavows its prior

8

representations that its reporting to the CRAs was truthful and accurate, then res judicata is inapplicable and the lack of truthfulness on Wells Fargo's part will be sufficient to overcome dismissal of his defamation claim. With regard to his conversion claim, Plaintiff argues that res judicata is inapplicable because the Court dismissed his earlier conversion claim without prejudice, and that he has alleged sufficient additional facts in his current Complaint to state a claim of conversion.

      1.     <u>Defamation Claim</u>

In his Complaint, Plaintiff alleges that Wells Fargo falsely represented to the CRAs that his home mortgage loan account with Wells Fargo is closed, that his home mortgage loan account with Wells Fargo has a $0 balance, and that since November, 2010, there have been no payments on his home mortgage loan account. Doc. 1-2 at ¶ 6. Plaintiff's defamation claim is based entirely on these allegedly false representations by Wells Fargo to the CRAs. Id. at ¶¶ 11-13. Likewise, in his complaint in the 2011 Action, Plaintiff alleged that Wells Fargo falsely represented to the CRAs that his account was closed, that his account had a $0 balance, and that there was no payment history after November, 2010. 2011 Action, Doc. 1 at ¶¶ 118, 119, 123. And in his complaint in the 2011 Action, Plaintiff's defamation claim was based entirely on these same allegedly false representations by Wells Fargo to the CRAs. Id. at ¶¶ 115-125, 127-132, 133-135. In the 2011 Action, the Court dismissed Plaintiff's defamation claims with prejudice. 2011 Action, Doc. 68 at 22.

"The doctrine of res judicata, or claim preclusion, will prevent a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017). "The principle underlying the rule of claim preclusion is that a party who once has had a chance to

litigate a claim before an appropriate tribunal usually ought not have another chance to do so."
*Id.* Claim preclusion applies where the following three elements exist: "(1) a final judgment on the merits in an earlier action; (2) identity of the parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Id.* In addition, the party resisting claim preclusion must have had "a full and fair opportunity to litigate the claim in the prior action." *Id.*

Here, all of the necessary elements exist to apply claim preclusion to Plaintiff's defamation claim. First, the Court's dismissal with prejudice of Plaintiff's defamation claim for failure to state a claim under Rule 12(b)(6) is a final judgment on the merits for purposes of claim preclusion. *See In re Franklin Sav. Corp.*, 296 B.R. 521, 527 (D. Kan. 2002); *see also Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 (10th Cir. 2014) ( "[T]he Ninth Circuit's dismissal for failure to plead a viable cause of action is a decision on the merits under that circuit's (and every other circuit's) law"). Second, the parties in each action – Mr. Schueller and Wells Fargo – are identical. Third, there is "identity of the cause of action in both suits" because Plaintiff's defamation claim in the instant action and his defamation claim in the 2011 Action arise from the same underlying events, namely, Wells Fargo's allegedly inaccurate reporting to the CRAs of the status of Plaintiff's loan. *Lenox*, 847 F.3d at 1239-40 (citing *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) ("This circuit embraces the transaction approach to the definition of 'cause of action.' Under this approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence.")).

Even where the three requisite elements of claim preclusion are present, its application is inappropriate if "the party seeking to avoid preclusion did not have a full and fair opportunity to litigate the claim in the prior suit." *Lenox*, 847 F.3d at 1243 (citation omitted). "This narrow

10

exception applies only where the requirements of due process were not afforded – where a party shows a deficiency that would undermine the fundamental fairness of the original proceedings." *Id.* (citations omitted). "The fairness of the prior proceeding is determined by examining any procedural limitations, the party's incentive to fully litigate the claim, and whether effective litigation was limited by the nature or relationship of the parties." *Id.* (citation omitted). Here, Plaintiff does not argue, much less demonstrate that the 2011 Action was deficient in any way that undermined his due process rights or precluded him from fully litigating his defamation claim. Indeed, Plaintiff was provided the opportunity to brief his claim both in the district court and in the Tenth Circuit. Accordingly, there is no basis for the Court to withhold application of claim preclusion here, where the three requisite elements are met.

Indeed, in his response, Plaintiff does not contest that the elements of claim preclusion are met, but instead argues that if Wells Fargo now "negat[es] or disavow[s] its prior representations" to the CRAs regarding the status of Plaintiff's mortgage loan, because those representations formed the basis for the Court's dismissal of his defamation claim, then his current defamation claim is not barred by res judicata. Doc. 14 at ¶ 4(c). Thus, Plaintiff explains, "there may or may not be res judicata, dependent on Wells Fargo's response." Id. at ¶ 4(e). Regardless of the soundness of Plaintiff's argument, it is clear that Wells Fargo has not negated or disavowed its prior representations to the CRAs. *See* Doc. 17 at 9. Accordingly, under these circumstances, it appears undisputed that Plaintiff's defamation claim is barred by claim preclusion and must be dismissed on that basis.

        2.      <u>Conversion Claim</u>

In his Complaint, Plaintiff alleges that if Wells Fargo's representations to the CRAs are true, namely, that Plaintiff's mortgage loan account is closed and there is no outstanding balance

on his account, then there can be "no legally valid and enforceable lien on plaintiff's property" and as a result "Wells Fargo has no legal basis for demanding and extracting a monthly mortgage payment." Doc. 1-2 at ¶ 7. Accordingly, Plaintiff alleges, from November 2010 to the present, "Wells Fargo has unlawfully extracted or embezzled monies via an automatic debit from plaintiff's checking account" and has converted those monies to its own use. Id. at ¶ 8. Plaintiff's conversion claim is based entirely on this allegedly wrongful withdrawal by Wells Fargo of monthly mortgage payments from Plaintiff's bank account. Id. at ¶ 9. Likewise, in his complaint in the 2011 Action, Plaintiff alleged that if Wells Fargo's reporting to the CRAs was true, then "Wells Fargo has no legal right to extract from plaintiff's checking account monies as payment on that loan." 2011 Action, Doc. 1 at ¶¶ 118, 119, 123. And in his complaint in the 2011 Action, Plaintiff's conversion claim was based entirely on this allegedly wrongful withdrawal by Wells Fargo of monthly mortgage payments from Plaintiff's bank account. Id. at 115-125, 127-132, 133-135.

Wells Fargo argues that Plaintiff's conversion claim is barred by res judicata. Plaintiff notes however, that the Court dismissed Plaintiff's conversion claim without prejudice. According to Plaintiff, because the dismissal of his conversion claim was without prejudice, it does not meet the first element of claim preclusion, namely that there was a final judgment on the merits in an earlier action. Doc. 14 at ¶ 3(b). The Court need not determine whether there was a "final judgment on the merits" of Plaintiff's conversion claim in the 2011 Action, however, because his current iteration of that claim fails to state a claim upon which relief can be granted, and must be dismissed on that basis regardless of whether claim preclusion applies.

In the 2011 Action, the Court made clear that Plaintiff had not alleged any facts that, if proven, would demonstrate that Plaintiff's payments to Wells Fargo were involuntary. In the

12

instant action, Plaintiff has failed to allege any facts additional to or different from those he alleged in the 2011 Action. Plaintiff argues that he has alleged such additional facts, which he describes as follows:

> If a lender (Wells Fargo) tells the borrower (plaintiff) that the unpaid balance on his loan has reached $0, no reasonable debtor in his right mind would, in the absence of some form of coercion, voluntarily continue to make loan payments. That is, when a loan has a zero $ balance (no further payment on debt is due), it is unrealistic and delusional to posit that further payments are voluntary. Basically, Wells Fargo would have this Court suspend credulity and then believe: ***even though it itself as the lender categorically (& truthfully) states that the unpaid loan balance is $0.00 and that the underlying loan is closed, ironically the debtor so loves Wells Fargo that he continues voluntarily paying monies to Wells Fargo even though according to Wells Fargo, no money is owed. This position is a reduction ad absurdum.***

Doc. 14 at ¶ 3. These described "facts," however, are not facts at all. Rather, "they are no more than conclusions" and thus "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

As was his complaint in the 2011 action, Plaintiff's Complaint herein is devoid of any allegations that, if proven, would demonstrate that the payments automatically withdrawn from his checking account on his mortgage loan were made contrary to his instruction or without his authorization. Indeed, Plaintiff attaches to his Complaint the very same account statements that he attached to his complaint in the 2011 Action. Those account statements indicate that they are being provided as a "courtesy should you voluntarily decide to make your loan payments," that Wells Fargo is not attempting to collect the discharged debt from Plaintiff personally, and that the statement is for informational purposes only because "as directed by you, your payments are scheduled to withdraw automatically." Doc. 1-2, Ex. 1. In the 2011 Action, the Court specifically found that these statements demonstrate that any payments made by Plaintiff on his mortgage loan after November 2010 were voluntary.

In connection with his conversion claim, Plaintiff has pleaded no new factual content or provided any new documentation to controvert the documentation before the Court in the 2011 Action. Indeed, Plaintiff alleges in his Complaint that, as a result of the bankruptcy discharge, his personal liability for the Wells Fargo mortgage was discharged, but the *in rem* liability on the property remains. Doc. 1-2 at ¶ 5. Accordingly, the facts *as alleged by Plaintiff himself* explain why he has continued – voluntarily – to make the monthly payments on his mortgage loan. Because Plaintiff's Complaint contains no well-pleaded factual allegations that, if proven, would demonstrate that his monthly mortgage payments are involuntary, Plaintiff has failed to state a claim for conversion upon which relief can be granted.

II.     Motion for Rule 11 Sanctions

   A.     Legal Standard

Rule 11 cautions attorneys and unrepresented parties alike that, by "presenting to the court a pleading, written motion, or other paper," they certify to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the paper meets the following conditions:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015) (quoting Fed. R. Civ. P. 11(b)). "In short, Rule 11 requires that a 'pleading be, to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and . . . not interposed for any improper purpose.'" *Predator*, 793 F.3d at 1182 (quoting *Coffey v. Healthtrust, Inc.,* 1 F.3d 1101, 1104 (10th Cir.1993)). "In deciding whether to impose Rule 11 sanctions, a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument." *Dodd Ins. Serv., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991).

Notably, "Rule 11 "speaks of attorneys and parties in a single breath and applies to them a single standard." *McCormick v. City of Lawrence, Kan.,* 218 F.R.D. 687 (D. Kan. 2003) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 548 (1991)). Accordingly, a plaintiff proceeding on a *pro se* basis is equally subject to the requirements of Rule 11. *See Salmon v. Nutra Pharma Corp.*, 687 F. App'x 713 (10th Cir. 2017) (imposing Rule 11 sanctions on pro se plaintiff); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.").

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1). An "appropriate sanction" is one "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Predator*, 793 F.3d at 1182 (quoting Fed. R. Civ. P. 11(c)(4)). In particular, "if imposed on motion and warranted for effective deterrence,"

the court may enter an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."   Fed. R. Civ. P. 11(c)(4).

Finally, Rule 11 contains a "safe harbor" provision, which provides that a motion for sanctions must be served, "but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."   Fed. R. Civ. P. Rule 11(c)(2).

B.  The Instant Case

As an initial matter, Wells Fargo represents, and Plaintiff does not dispute, that Wells Fargo complied with the safe harbor provision of Rule 11(c)(2) by serving its motion upon Plaintiff before filing it.    Plaintiff did not withdraw his Complaint or move to dismiss this action within 21 days after service of the motion.    Wells Fargo's motion for sanctions thus is properly before the Court.

In support of its motion, Wells Fargo notes that in the instant action, Plaintiff brings the same claims as he did in the 2011 Action, and bases those claims on the same legal theories and facts on which he based his claims in the 2011 Action.    Wells Fargo further notes that, in the 2011 Action, the Court not only dismissed Plaintiff's claims but also found them to be frivolous and, as a result, awarded fees to Wells Fargo in connection with defending against those claims. Under these circumstances, Wells Fargo argues, Plaintiff has no objectively reasonable basis for bringing and pursuing the instant action, and thus should be sanctioned under Rule 11. Specifically, Wells Fargo argues that an appropriate sanction is dismissal of this action with prejudice and an award to Wells Fargo of attorney's fees and costs.

In opposing the motion, Plaintiff notes that in the 2011 Action the Court "expressly permitted" him to bring a new cause of action for conversion.   Doc. 15 at ¶ 13.   Plaintiff also

16

states in conclusory fashion that Wells Fargo has failed to meet its burden of showing "any bad faith, ill will, conscious or reckless disregard or conscious, willful disregard of court orders or rulings on the part of plaintiff that would warrant sanctions." Id. Plaintiff provides no substantive response to Wells Fargo's motion, but rather repeats the unavailing arguments that he presents in opposition to Wells Fargo's motion to dismiss.

As discussed above, Plaintiff's claims are identical to, and arise from the same factual circumstances as the claims considered and dismissed in the 2011 Action. While the Court in the 2011 Action indicated that Plaintiff might be able to allege additional facts to state a claim of conversion, Plaintiff did not allege any such additional facts in this case. Accordingly, Plaintiff's Complaint is no more than a reiteration of his previous insufficient claims.

Indeed, in the 2011 Action, the Court not only dismissed Plaintiff's claims, but also specifically found that Plaintiff's complaint was frivolous, that based on his own documents, his defamation and conversion claims were "entirely groundless," and that from the point when Wells Fargo filed its motion "fully appris[ing] Schueller of the law, as well as the magistrate judge explaining to Schueller his complaint was without merit, Schueller stubbornly, and without any legal basis for doing so, persisted in pursuing his claims in bad faith." Fee Order at 9. As a result, the Court awarded Wells Fargo its reasonable fees incurred in replying to Plaintiff's "bad-faith response" to Wells Fargo's motion to dismiss. Thus, since entry of the Fee Order on March 27, 2013, Plaintiff has been on notice of the baselessness of his claims.

In light of the Court's findings in the Fee Order, in addition to its dismissal of Plaintiff's defamation and conversion claims, no "reasonable and competent attorney would believe in the merit" of the arguments on which the instant action is based. *Dodd*, 935 F.3d at 1155. Neither Plaintiff's defamation claim nor his conversion claim is "well grounded in fact" or "warranted by

17

existing law or a good faith argument for the extension, modification, or reversal of existing law." *Predator*, 793 F.3d at 1182. Plaintiff's conclusory statements notwithstanding, the Court can find no proper purpose for Plaintiff's Complaint. *Predator*, 793 F.3d at 1182.

For these reasons, by filing his Complaint and continuing to pursue the instant action, Plaintiff is in violation of Rule 11(b). The Court finds that the sanctions requested by Wells Fargo, namely, dismissal of this action with prejudice and an award to Wells Fargo of its reasonable attorney's fees and costs in defending against this action, are "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," and thus are appropriate. *Predator*, 793 F.3d at 1182. The Court directs Wells Fargo to file an application for attorney's fees and costs, including supporting affidavits and documentation, within ten (10) days of entry of this Memorandum Opinion. Plaintiff's objections, if any, to the reasonableness of Wells Fargo's requests must be filed within fourteen (14) days thereafter.

## CONCLUSION

Plaintiff's defamation claim is barred by claim preclusion and his conversion claim fails to state a claim upon which relief can be granted. Accordingly, Plaintiff's Complaint must be dismissed in its entirety. Plaintiff had no objectively reasonable basis to bring another action against Wells Fargo asserting the same claims that were dismissed and found to be frivolous in the 2011 Action. Accordingly, Plaintiff is in violation of Rule 11, and sanctions are warranted.

**IT IS THEREFORE ORDERED** that Wells Fargo & Company's Motion to Dismiss [Doc. 10] and Wells Fargo and Company's Rule 11 Motion for Sanctions [Doc. 11] are **GRANTED**, as follows: this action is dismissed with prejudice and reasonable attorney's fees and costs will be awarded to Wells Fargo as described herein, in an amount to be determined by

the Court following submission of the required documentation by Wells Fargo and after consideration of any timely-filed objections by Plaintiff.

DATED this 28th day of March 2018.

_____
MARTHA VÁZQUEZ
United States District Judge