IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NORBERT A. SCHUELLER,

    Plaintiff,

v.                                                                     CIV 16-0107 MV/KBM

WELLS FARGO & COMPANY, d/b/a
WELLS FARGO BANK, N.A., d/b/a
WELLS FARGO HOME MORTGAGE,

    Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Wells Fargo Bank, N.A.'s Motion for Attorney's Fees (*Doc. 39*) filed on April 9, 2018. Having considered the record, submissions of counsel, and relevant law, the Court finds that Defendant's motion should be **granted in part**.[1]

## I.    Procedural History

District Judge Marth Vazquez laid out the full procedural and factual background of this matter in her March 28, 2018 Memorandum Opinion and Order (*see Doc. 36* at 1-7), and I will recite only those facts relevant to the motion at issue here.

<u>2011 Lawsuit</u>

Plaintiff filed his first lawsuit against Wells Fargo & Company (Wells Fargo) in 2011 in federal court. *Id.* at 2; *see also Schueller v. Experian Info. Sols., Inc., et al.*, No. 11-cv-00955 MCA/LFG, Compl. (D.N.M. Oct. 25, 2011). Plaintiff asserted several claims

---

[1] Judge Vazquez entered an Order of Reference Pursuant to 28 U.S.C. § 636(b)(1)(A) on April 12, 2018, referring this motion to the undersigned Magistrate Judge "to hear and determine" the motion. *Doc. 40.*

against Wells Fargo in the 2011 lawsuit, including defamation and conversion claims, as well as claims under the Fair Credit Reporting Act (FCRA). *See Doc. 36* at 2. Plaintiff alleged that Wells Fargo had unlawfully and fraudulently continued to withdraw money from Plaintiff's bank account for mortgage payments for certain real property, even after Plaintiff's personal liability for the mortgage was discharged during 2010 bankruptcy proceedings. *See id.* at 1-2.

On July 30, 2012, the court granted Wells Fargo's motion to dismiss. *See id.* at 2. "[T]he Court explained that Plaintiff's bankruptcy discharge only discharged his personal liability for the debt, not the mortgage lien . . . ." *Id.* at 3. Because the bankruptcy discharge included an explanation that Plaintiff could opt to "voluntarily pay any debt that [had] been discharged[,]" and because there was evidence that Wells Fargo withdrew the payments "from Plaintiff's bank account at his direction[,]" Plaintiff had failed to state a claim for conversion. *Id.* at 3-4. The court found, however, that because there was a chance Plaintiff *could* allege additional facts to demonstrate that these payments were not voluntary, the claim should be dismissed without prejudice. *Id.* at 4. The court also held that the record did not support Plaintiff's defamation or FCRA claims and dismissed those claims with prejudice. *Id.*

Wells Fargo filed a motion for attorney's fees and costs, which the court granted in part on March 27, 2013. *See Schueller*, No. 11-cv-00955, Mot. for Attys' Fees & Costs (Aug. 29, 2012); Mem. Op. & Order (D.N.M. Mar. 27, 2013) ("*2011 Schueller Mem. Op. & Order*"). "The Court described Plaintiff as a 'law-trained *pro se* litigant and frequent filer of various and sundry lawsuits . . . .'" *Id.* at 4 (quoting *2011 Schueller Mem. Op. & Order*, at *1). The court held that Plaintiff's 2011 lawsuit was frivolous, but it did

2

not conclude that Plaintiff acted in bad faith. *Id.* at 4-5 (discussing *2011 Schueller Mem. Op. & Order*, at *9). The court therefore declined to award fees to Wells Fargo up to the filing of the motion to dismiss. *Id.* at 5. After Plaintiff was apprised of the relevant law through Wells Fargo's motion and the magistrate judge's report and recommendation, however, Plaintiff "stubbornly, and without any legal basis for doing so, persisted in pursuing his claims in bad faith." *Id.* (quoting *2011 Schueller Mem. Op. & Order*, at *10). Thus, the court awarded Wells Fargo fees "from that point forward in replying to Schueller's bad-faith response to the motion to dismiss . . . ." *Id.* (quoting *2011 Schueller Mem. Op. & Order*, at *10). Plaintiff appealed to the Tenth Circuit, which upheld the district court's decisions. *See id.*; *see also Schueller v. Wells Fargo & Co.*, 559 F. App'x 733 (10th Cir. 2014). "Plaintiff filed a petition for writ of certiorari to the United States Supreme Court, which was denied on October 6, 2014." *Doc. 36* at 6 (citing *Schueller v. Wells Fargo & Co.,* 135 S. Ct. 275 (2014)).

<u>2016 Lawsuit</u>

Undaunted, Plaintiff filed this lawsuit against Wells Fargo in state court on January 15, 2016, and Wells Fargo promptly removed the action to federal court. *See Docs. 1*; *1-1*. As Judge Vazquez noted in her March 28, 2018 Memorandum Opinion and Order, Plaintiff's 2016 claims "are based on *the same conduct* that was at issue in the 2011 Action . . . ." *Doc. 36* at 6 (emphasis in original). Not surprisingly, then, Wells Fargo moved to dismiss on the basis "that Plaintiff's claims are barred under the doctrine of res judicata, and that, even if res judicata does not apply, Plaintiff's claims are subject to dismissal because he has failed to properly state a claim upon which relief can be granted for either defamation or conversion." *Id.* at 8. Judge Vazquez

3

ultimately found "that Plaintiff's defamation claim is barred by claim preclusion" and dismissed it with prejudice. *Id.* at 11. Plaintiff failed to plead any additional facts to support his conversion claim, so Judge Vazquez dismissed that claim with prejudice as well. *Id.* at 12-14.

Directly relevant to this motion, Judge Vazquez also granted Wells Fargo's motion for Rule 11 sanctions. *See id.* at 14-18. Wells Fargo asked for attorney's fees and costs due to the fact that Plaintiff's claims and legal theories were identical in both his 2011 and 2016 lawsuits. *See id.* at 16. Noting that "Plaintiff has been on notice of the baselessness of his claims" at least since the award of fees in his 2011 lawsuit, Judge Vazquez found that "no 'reasonable and competent attorney would believe in the merit' of the arguments on which" Plaintiff bases his current lawsuit. *Id.* at 17 (quoting *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.3d 1152, 1155 (10th Cir. 1991) (internal citations omitted)). Thus, by "continuing to pursue the instant action, Plaintiff is in violation of Rule 11(b)" and the requested sanctions are proper. *Id.* at 18. Judge Vazquez directed "Wells Fargo to file an application for attorney's fees and costs, including supporting affidavits and documentation," which is now before the undersigned magistrate judge. *See id.*; Doc. 39.

Motion for Attorney's Fees

Wells Fargo now seeks $24,584.06[2] in attorneys' fees for 78.70 hours of legal services, $160 in paraprofessional fees for 1.60 hours of paraprofessional services, and

---

[2] Mr. Marshall states in his affidavit that "Wells Fargo's attorneys' fees in this case are $24,782.76." *Doc. 39-1* at 3 ¶ 7. I have calculated a different total. 11.20 hours x $386.97 = $4,334.06 for Mr. Marshall; 54.00 hours x $300 = $16,200 for Ms. Stevens; 8.10 hours x $300 = $2,430 for Ms. Gambill; and 5.40 hours x $300 = $1,620 for Ms. Brown, for a total of

4

$410 in costs to cover the filing fee. *See* Doc. 39-1 at 2-3; *see also* Doc. 39-1, *Ex. 1*, at 6-7. Plaintiff failed to file a response to Wells Fargo's Motion for Attorney's Fees, which pursuant to our District's Local Rules "constitutes consent to grant the motion." *See* D.N.M.LR-Civ. 7.1(b).

## II. Legal Standard

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Auge v. Stryker Corp.*, No. 14-CV-1089 KG/SMV, 2017 WL 4355974, at *1 (D.N.M. Sept. 28, 2017) (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (internal citations omitted)). "The lodestar is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." *Id.* (quoting *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (internal quotations omitted)).

"'The party requesting attorney fees bears the burden of proving' the two components used to calculate the fee award: (i) 'the amount of hours spent on the case,' and (ii) 'the appropriate hourly rates.'" *Id.* quoting (*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000) (internal citation omitted)). "Once the Court makes these two determinations, the fee 'claimant is entitled to the presumption that this lodestar amount reflects a "reasonable" fee.'" *Id.* (quoting *Robinson*, 160 F.3d at 1281) (internal and subsequent citations omitted).

---

$24,584.06. Even adding in the requested paraprofessional fees at $160, I calculate a total of $24,744.06. I presume, then, that there was an error in Mr. Marshall's calculations.

5

The movant must provide sufficient information for the Court "to evaluate prevailing market rates." *Id.* (citing *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006)). The movant "must also demonstrate that the rates are similar to rates for similar services by 'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community and for similar work." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (alteration in original); citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1255-56 (10th Cir. 1998)). "Only if the district court does not have adequate evidence of prevailing market rates for attorney's fees may it, 'in its discretion, use other relevant factors, including its own knowledge, to establish the rate.'" *Id.* (quoting *Case*, 157 F.3d at 1257) (internal and subsequent citations omitted).

### III. Analysis

Wells Fargo seeks $24,584.06 in attorneys' fees. *Doc. 39-1*, *Ex. 1*, at 6-7. This request includes legal services rendered by Mr. Gregory Marshall (a 1999 law school graduate, partner of the law firm, and co-chairperson of the financial services litigation group), Ms. Sandra Brown (a 2005 law school graduate and staff attorney with the financial services group), Ms. Jennifer Stevens (a 2006 law school graduate and former staff attorney with the financial services group), and Ms. Allison Gambill (a 2008 law school graduate and former staff attorney with the financial services group). *See Doc. 39-1*, ¶¶ 1, 4(a)-(d). Wells Fargo also requests $160 in fees for 1.6 hours of paraprofessional services at a rate of $100.00 per hour. *Id.* ¶ 4(e). Finally, Wells Fargo asks for $410.00 in costs to cover its filing fee. *Id.* ¶ 8. I will begin by examining the requested hourly rates.

### A. The Lodestar Calculation

#### 1. Reasonable Hourly Rate

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." *Auge*, 2017 WL 4355974, at *3 (quoting *Lippoldt*, 468 F.3d at 1224) (internal quotation marks and citation omitted). "The rate must reflect rates that are reasonable in light of: (i) the attorney's level of experience; and (ii) the work the attorney performed." *Id.* (quoting *XTO Energy, Inc. v. ATD, LLC*, No. 14-cv-1021 JB/SCY, 2016 WL 5376322, at *10 (D.N.M. Aug. 22, 2016)). "In general, the 'relevant community' is 'the area in which the court sits . . . .'" *Id.* (quoting *Gottlieb v. Barry*, 43 F.3d 474, 485 n.8 (10th Cir. 1994) (internal quotations omitted)). The court looks first "to the parties' evidence of the prevailing market rate[,]" which is "typically established through the affidavits of local attorneys who practice in the same field as the attorneys seeking the fees." *Id.* (citations omitted). "If the court lacks adequate evidence to determine the prevailing market rate, it may use other factors, including its own knowledge, to establish the rate." *Id.* (citing *Case*, 157 F.3d at 1257).

Here, Wells Fargo did not submit affidavits from any other local attorneys, instead citing to three cases in an effort to support its position that the requested "hourly rate [is] commiserate with" the experience of its attorneys. *Doc. 39* at 4. First, Wells Fargo cites *Payne v. Tri-State Careflight, LLC*, 278 F. Supp. 3d 1276, 1298 (D.N.M. 2017), in which Judge Browning approved a $350 per hour rate for the lead counsel and a $300 per hour rate for a partner in a class action suit. Wells Fargo next cites *Lane v. Page*, 862 F. Supp. 2d 1182, 1257 (D.N.M. 2012), another class action lawsuit wherein

Judge Browning noted that $200 per hour is a "relatively low rate" for attorney's fees. The case at hand, however, is not a class action suit, and both of these cases are inapposite.

Finally, Wells Fargo cites *Valdez v. Herrera*, No. 09-CV-0668 JCH/DJS, Order Granting Attorneys' Fees, at *3 (D.N.M. Mar. 21, 2011), for the proposition that the court approved a rate of $350 per hour in that case. *Doc. 39* at 4. This citation does not, however, provide a complete picture. In *Valdez*, plaintiffs sought "declaratory and injunctive relief to redress ongoing violations of New Mexico's obligations under the National Voter Registration Act of 1993 . . . ." *See Valdez*, No. 09-CV-0668, Compl. at *2 (D.N.M. July 9, 2009). After the court granted plaintiff's motion for partial summary judgment and the parties subsequently reached a settlement agreement, the plaintiff applied for attorneys' fees pursuant to that settlement agreement. *See Valdez*, No. 09-CV-0668, Order Granting Attys' Fees, at *2 (D.N.M. Mar. 21, 2011). Noting "the complexity of the litigation involved," Judge Herrera granted the motion and approved a rate of "$350 per hour for attorneys who graduated from law school before 1996[,]" or who had over 15 years of experience at the time of the opinion; "$300 per hour for lawyers who graduated between 1996 and 2000[,]" or who had between 11 and 15 years of experience; "$225 per hour for lawyers who graduated between 2001 and 2006[,]" or who had between 5 and 10 years of experience; and $150 per hour for lawyers who graduated in 2007 and afterwards[,]" or who had approximately 4 years or less of experience. *See id.* at *3, *4. Again, the current case is distinguishable, as it is not a civil rights action seeking declaratory and injunctive relief, nor is it complex.

Surveying more recent decisions, Judge Browning awarded $375 per hour in a case that "was headed toward a class action, but for the [plaintiffs'] desire to settle" and noted that this "rate approaches the upper end of what the local market would currently bear for the hourly rate of a very experienced partner engaged in complex, multi-party commercial litigation." *Fallen v. Grep Sw., LLC*, 247 F. Supp. 3d 1165, 1182, 1198 (D.N.M. 2017) (citations omitted). I note that Mr. Marshall has requested an hourly rate above that which Judge Browning approved in *Fallen*.

In *Copar Pumice Co. v. Morris*, No. CIV 07-0079 JB/ACT, 2012 WL 238667 (D.N.M. June 13, 2012), a civil rights action brought pursuant to 42 U.S.C. § 1983, Judge Browning awarded $235 per hour for partners, $200 per hour for senior associates, $150 per hour for other associates, and $75 per hour for paralegals. *See Copar Pumice Co.*, 2012 WL 2383667, at *5, 20 (citing *Avendano v. Smith*, No. 11-0556, 2011 WL 5822733, at *2 (D.N.M. Nov. 3, 2011) ("finding rates of $180.00 per hour reasonable"); *Mountain Highlands, LLC v. Hendricks*, No. 08-0239, 2010 WL 1631856, at *9-10 (D.N.M. Apr. 2, 2010) ("approving an hourly rate of $170.00 to $210.00 per hour as reasonable for commercial litigation"); *Allahverdi v. Regents of Univ. of N.M.*, No. 05-0277, 2006 WL 1304874, at *2 (D.N.M. Apr. 25, 2006) ("finding hourly rate of $225.00 reasonable in a public-employment dispute"); *Kelley v. City of Albuquerque*, No. 03-0507, 2005 WL 3663515, at *15-17 (D.N.M. Oct. 24, 2005) ("finding $250.00 per hour to be a reasonable rate in an employment dispute")). This included work done for legal research, administrative matters, and drafting responses to motions for summary judgment, for abstention, and to dismiss. *See id.* at *6.

In another case involving allegations of four causes of action arising under New Mexico state law, Judge Browning awarded $200 per hour to an Assistant Attorney General with 13 years of experience. *See New Mexico v. Valley Meat Co., LLC*, No. CIV 14-1100 JB/KBM, 2015 WL 9703255, at *2, 23-24 (D.N.M. Dec. 14, 2015).

In *Chavez v. Stomp*, Civ. No. 10-205 JCH/ACT, Memo. Op. & Order, at *3, 7 (D.N.M. Feb. 27, 2014), the Court awarded $210 per hour in a case involving Title VII and discrimination claims under federal law, where the attorney "failed to provide the Court with information on his experience in civil cases of [that] type and his usual hourly rate . . . ."

Judge Armijo, in a removal case brought pursuant to the New Mexico Minimum Wage Act, awarded $250 per hour to an attorney with 18 years of experience, and $150 per hour to an attorney with 3 years of experience. *McCoy v. LTD Driving Sch., Inc.*, No. 15-CV-00639 MCA/LAM, Mem. Op. & Order, at *10-11 & 11 n.5 (D.N.M. Feb. 21, 2017).

Judge Browning has found $350 per hour reasonable for the Rodey law firm to charge for "high-end commercial work." *XTO Energy, Inc.*, 2016 WL 5376322, at *13 (D.N.M. Aug. 22, 2016). Similarly, Judge Vidmar relied on *XTO Energy* in finding $350 per hour appropriate for lead counsel and $150 for an associate attorney in a "complex commercial" case. *Coll v. Stryker Corp.*, No. 14-cv-1089 KG/SMV, Mem. Op. & Order Awarding Atty's Fees, at *10 (Apr. 11, 2017).

The case at hand is not an example of a "high-end" or "complex" commercial case, nor is it a class action as the cases are above that authorized fees of $300 per hour or more. I believe that the work performed in this action, a lawsuit Wells Fargo describes as "identical" to Plaintiff's 2011 action (*see Doc. 39* at 2), is closer to the work

performed in either *Copar Pumice*, *Valley Meat Company*, or *McCoy*. In fact, in her 2013 opinion awarding attorneys' fees to Wells Fargo against Mr. Schueller, Judge Armijo specifically noted that it "was not a complex case, and . . . [a]part from its motion to dismiss and reply brief, all of the Defendant's counsel's work involved normal procedural activities which required no specialized skills of any kind, like working on joint-status reports and producing Rule 26 disclosures, together with responding to a run-of-the-mill motion for sanctions and a motion to recuse, an 11-page stipulated motion to stay discovery, and paragraph-long stipulated notices of extension." *2011 Schueller Mem. Op. & Order*, at *15. In the present action, the attorneys researched and drafted removal documents (*Doc. 1*), a motion to dismiss and reply brief (*Docs. 10*; *17*), a motion for Rule 11 sanctions and reply brief (*Docs. 11*; *18*), a motion for attorney's fees (*Doc. 39*), and responses to Plaintiff's motion to remand (*Doc. 9*) and motion to reconsider (*Doc. 25*), along with various other minor filings (*see Docs. 4*; *19*; *20*; *28*; *32*; *34*; *41*). While I cannot say that the attorneys' work in this action did not require any specialized skill, neither may I conclude that it was complex or filled with unique legal issues.

More importantly, Wells Fargo "had the burden of proof on this issue." *See Coll*, No. 14-cv-1089 KG/SMV, Mem. Op. & Order Awarding Atty's Fees, at *10 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998)). Wells Fargo "could have established" a reasonable rate "by submitting affidavits from other experienced attorneys familiar with the prevailing rate. He did not do so, and I consider any such argument waived." *See id.* As a result, the Court will reduce the requested hourly rates to $250 per hour for Mr. Marshall and

$200 per hour for Ms. Brown, Ms. Gambill, and Ms. Stevens. These hourly rates are reasonable in light of the attorneys' experience, the work performed, and the rates in this community.

Wells Fargo also requests $100 per hour for the paraprofessional work (reduced from $165.00 per hour), but provides no authority for a rate that high. *Doc. 39* at 5. Wells Fargo only cites to *Payne*, 278 F. Supp. 3d at 1284, 1298, where the court approved the requested $90 per hour rate for paralegal work in a class action lawsuit but also reduced the time billed "by $2,500.00, because their block billed time entries [did] not allow the Court to distinguish how much time was spent on non-compensable administrative tasks." In *Copar Pumice*, the court awarded $75 per hour for paralegal work. *See Copar Pumice Co.*, 2012 WL 238667, at *20-21. The Court finds that an appropriate award for paraprofessional work in this case should be closer to that in *Copar Pumice*, at $80 per hour for a total of $128.

### 2. Time Expended on Motion

"Courts have an obligation to exclude hours not 'reasonably expended' from the lodestar calculation." *Auge*, 2017 WL 4355974, at *2 (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)). To find that hours are reasonably expended, the court determines: (1) "whether the attorney has exercised billing judgment and deleted excessive, unnecessary, or redundant fees from his or her fee application, and" (2) "whether the fee award is reasonable in light of the success obtained." *Id.* (citing *Hensley v. Ekerhart*, 461 U.S. 424, 434 (1983)). The moving party has the burden to show the hours were reasonably expended. *Id.* "With respect to legal research performed, the party requesting fees must provide enough information to determine

whether the research was related to successful issues and reasonably necessary." *Id.* (citing *Case*, 157 F.3d at 1252). "An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application." *Id.* (quoting *Case*, 157 F.3d at 1254 (internal quotation and citations omitted)).

Here, because the Court found Plaintiff violated Rule 11(b) simply by filing this lawsuit (*see Doc. 36* at 18), Wells Fargo requests attorney's fees for all of the hours it expended successfully defending the suit. The fees requested include: (1) 29 hours for reviewing the complaint and researching and drafting the removal documents, researching and drafting a motion for Rule 11 sanctions, drafting a corporate disclosure statement and a motion to extend; (2) 17.9 hours for researching and drafting responses to Plaintiff's motions to remand and reconsider; (3) 26.7 hours for researching and drafting the motion to dismiss, including res judicata issues, and the reply thereto; and (4) 5.1 hours for researching and drafting this motion for fees. *See Doc. 39-1, Ex. 1*. There is no question that Wells Fargo successfully defended this suit.

In comparison, the Court notes that the defendant in *Gallup Med Flight, LLC v. Phoenix Insurance Co.*, Civ. No. 16-01197 KG/KBM, Mem. Op. & Order at *10 (D.N.M. Jan. 9, 2018), claimed 182.7 hours for work "preparing and filing a notice of removal, answering Plaintiff's Complaint," engaging in certain pretrial and discovery procedures, responding to two substantive motions (a motion for judgment on the pleadings and a motion to dismiss), and traveling for a hearing. The *Gallup Med Flight* Court found the hours were reasonable. *Id.* at *11. I also note that Judge Armijo allowed Wells Fargo to claim 13 hours for legal research/drafting of the motion for attorney fees in the 2011 lawsuit. *See 2011 Schueller Mem. Op. & Order*, at *17-18.

Wells Fargo has meticulously detailed how the requested hours were spent, and I can find no instances of excessive, incomplete, or inappropriate billing. *See Doc. 39-1, Ex. 1*. Thus, the Court finds that the hours requested are reasonable under the circumstances.

Wherefore,

**IT IS HEREBY ORDERED** that Wells Fargo Bank, N.A.'s Motion for Attorney's Fees (*Doc. 39*) is granted in part as follows:

(1) Wells Fargo's legal fees are approved, but at lower rates than requested: $250 per hour for Mr. Marshall, and $200 per hour for Ms. Brown, Ms. Gambill, and Ms. Stevens. Mr. Marshall spent 11.20 hours on the case, Ms. Brown 5.4 hours, Ms. Gambill 8.10 hours, and Ms. Stevens 54.00 hours. Thus, the Court approves a total of $16,300 in legal fees ($250 x 11.20 = $2,800; $200 x 5.4 = $1,080; $200 x 8.10 = $1,620; $200 x 54.00 = $10,800).

(2) Wells Fargo's paraprofessional fees are approved, but a lower rate than requested: $80 per hour at 1.6 hours for a total of $128.

(3) The Court also approves Wells Fargo's request for $410 in reasonable costs, for a total award to Wells Fargo of $16,838 in reasonable legal fees and costs.

_____
UNITED STATES MAGISTRATE JUDGE

14